PLATTSBURGH GAS AND ELECTRIC COMPANY, Respondent, *v.* CHARLES M. MILLER, Appellant.

Third Department, January 7, 1925.

Liens — mechanic's lien — action to foreclose — defendant owns land and easement to use water from dam on plaintiff's property — lien is based on cost of repairs to dam — complaint does not allege contract by defendant to bear share of cost — plaintiff has no lien in absence of contract — complaint is insufficient.

The complaint in an action to foreclose a mechanic's lien is insufficient which alleges that the lien arose out of the cost of repairing a dam on the plaintiff's property; that the defendant's predecessor in title acquired his land, which does not adjoin the plaintiff's land, by a deed which granted the right to use a portion of water from the dam under an agreement to bear a proportionate part of the expense of repairing the dam, and that the repairs were made necessary by a partial destruction of the dam by water and ice. The complaint is insufficient for failing to allege that the defendant was bound by a contract to pay a proportionate cost of the expense of repairing the dam.

APPEAL by the defendant, Charles M. Miller, from an order of the Supreme Court, made at the Clinton Special Term and entered

in the office of the clerk of the county of Clinton on the 25th day of September, 1924, denying his motion to dismiss the complaint on the ground that it does not state facts sufficient to constitute a cause of action. (See 123 Misc. 651.)

*Patrick J. Tierney,* for the appellant.

*Wallace E. Pierce,* for the respondent.

COCHRANE, P. J.:

This is an action to foreclose a mechanic's lien. Plaintiff is the owner of the Nail Factory dam across the Saranac river in the city of Plattsburgh and of land adjacent to the site of the dam. The defendant is the owner of property on the shore of the river below the dam but not adjacent to plaintiff's property. In connection with its property the defendant has an easement to use a certain amount of water impounded by the dam and which is conveyed to its property through a canal, race or flume. It is alleged in the complaint that the plaintiff furnished certain materials and performed services in repairing said dam and, alleging the obligation of the defendant to bear three-sixteenths of the expense of such repairs, it has filed a notice of lien against his down-stream property under the provisions of the Lien Law.

The first question that arises is whether the complaint shows a contract obligation on the part of the defendant to pay any part of this expense. There is no direct allegation to that effect. It appears from the complaint that in the year 1882 Smith M. Weed conveyed to Williams Manufacturing Company the property now owned by defendant. The deed after describing the property describes the said easement in connection therewith as follows: " Together with the right to draw, take and use at all times from said Weed's part of the water at and on said dam an amount of water equal to One Hundred horse power at to one-fourth of the water on said dam, and also, if required, up to the overplus of the other quarter (and [an] interest in which was heretofore conveyed to Andrew Williams) if any." The deed also contains this provision: " Said party of the second part [Williams Manufacturing Company] its successors and assigns to be at [bear] its proportion of the expense of repairing and maintaining the said dam, but said proportion shall not exceed 6-16ths of the one-half to be borne by the owners of the water power on the west end of said dam, and to maintain and have access to the gates and structures upon said canal, race or flume." It does not appear that in the deed to defendant he assumed the obligation expressed in the deed above mentioned. Assuming, however, that as the successor of the Williams Manufacturing Company he became liable for the covenants and agree-

ments in the deed to the said company, such liability was only to his predecessors in title. The complaint does not indicate the plaintiff's source of title. It does not indicate through whom or to whom as a common grantor the plaintiff and the defendant trace their respective titles. It does not indicate that Mr. Weed when he conveyed to the Williams Manufacturing Company or at any other time owned the dam. It does not indicate that he was obligated to any other party to maintain the dam or to bear any portion of the expense of its maintenance. It does indicate that he had a right to use some of the water impounded by the dam and he conveyed to his grantee the right to use a portion of the water which he had a right to use. For anything that appears, Mr. Weed or his predecessors in title may have had the right to maintain the dam for their own benefit without being obliged to do so and it may have been with reference to such a condition that he required his grantee to share in the expense of repairing and maintaining the dam. There is nothing to indicate that any contract which Mr. Weed had with his grantee for the maintenance of the dam inured to the benefit of the plaintiff or its predecessors in title, and outside of the description in the deed the complaint lacks any allegation showing any contract or agreement on the part of the defendant or his predecessors in title to share in the expense of maintaining the dam. It seems clear that no contract on the part of the defendant is alleged which the plaintiff can enforce.

It remains to consider whether in the absence of such agreement plaintiff may acquire a lien under the circumstances here appearing. It is alleged in the complaint that the repairs were made with the knowledge and consent of the defendant. In *Kerwin* v. *Post* (120 App. Div. 179) it was alleged in the complaint that the parties owned adjoining premises between which there was a party wall and that *with the knowledge and consent of the defendant* the plaintiff performed services and furnished materials in making safe such wall " which was in a dilapidated and ruinous condition." The court said: " Eliminating the allegation that the defendant Post refused to contribute one-half the expense toward repairing the party wall, and assuming that under some state of facts a mechanic's lien could be properly filed for repairs made by one to a party wall which existed for the benefit of both owners of adjoining premises, and giving full force to the allegation that it was repaired with the consent of Post, still we think the facts alleged did not state a cause of action either to foreclose a mechanic's lien or to obtain a personal judgment against Post. The allegation is simply that there existed a party wall between the premises which was

40

dilapidated and out of repair." After reviewing the authorities the court continued: " So far as the allegations disclose, the party wall may have become in an ' unsafe, dilapidated and ruinous condition,' and the buildings destroyed from some outside cause. If the condition arose from such a cause and the buildings on both lots ceased to exist for that reason, the right to the party wall ceased, and the owner of one lot could not rebuild it and compel the owner of the other lot to contribute toward the expense." As to the nature of the repairs in the present case the allegation is as follows: " That during the winter and spring of 1922–1923 the said ' Nail Factory Dam ' was extensively damaged by the action of ice and high water conditions in the said Saranac River; that a large portion of the main structure and apron of the said dam was torn out and away; that the remainder of the dam was exposed to decay and rot; that plaintiff was compelled to and did repair the said damage to said dam by replacing the entire planking of the dam proper; by retimbering a portion of the apron and putting a new top on a large portion of the same; that plaintiff further filled a large portion with rip-rap and stone; that the said damage to the said dam was so extensive that the dam would not hold water, and all of the repairs to said dam were requisite and necessary to put the same in condition where it could be operated as it had been for many years last past." It seems to me the analogy between the case cited and the present case is complete. That case may be stronger for the plaintiff than the present, for there the wall between adjoining properties was owned in common. Here there is no allegation that the defendant owned or had any interest in the dam or any obligation to maintain or repair it. His only interest therein was of a permissive character, viz. to use if he so desired part of the water impounded thereby. In this case as in the case cited the structure was damaged " from some outside cause " which was " the action of ice and high water conditions in the said Saranac River." It was not a case of ordinary or natural repairs. The cost was $6,627.08. This amounted to a partial reconstruction necessitated by an extraordinary or unusual event. It does not seem to me that in the absence of an enforcible contract by the plaintiff the defendant was under any obligation to rebuild this dam or to contribute to the expense thereof. (See, also, Cole v. Hughes, 54 N. Y. 444.) It may be that the easement is of no further use to him; that he regards it as valueless; and I am aware of no equitable consideration which requires him to contribute to the expense of repairing the dam in the absence of an agreement to do so. Probably the plaintiff does not so contend. Its entire theory is that there is such an agreement. The proportion

of the expense claimed, three-sixteenths, so indicates. The fault of the complaint is that there is no allegation of such an agreement by the defendant enforcible by the plaintiff.

The order should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs, but with leave to the plaintiff to serve an amended complaint on the payment of such costs.

All concur; H. T. KELLOGG, J., not sitting.

Order reversed on the law, with ten dollars costs and disbursements, and motion granted, with ten dollars costs, with leave to plaintiff to serve an amended complaint on the payment of such costs.